**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CLARK VANOSDOLL,

      Petitioner,

vs.                                                            Case No.:    5:16-cv-705-Oc-32PRL

WARDEN, FCC COLEMAN

      Respondent.

_____/

## **ORDER**

Clark Vanosdoll ("Petitioner"), a federal inmate, initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1, Petition). He challenges the loss of 41 days of good time credit after he failed to provide a urine sample. Respondent has filed a brief in opposition (Doc. 7, Response), along with 13 exhibits (Doc. 7-1, "Resp. Ex. __"). Petitioner has filed a reply brief (Doc. 9, Reply), accompanied by 17 exhibits (Doc. 9-1, Doc. 9-2; "Pet. Ex. ___"). The Court has also considered Respondent's supplemental response (Doc. 26, Supplemental Response) and Petitioner's supplemental reply (Doc. 29, Supplemental Reply). For the reasons below, the petition is due to be denied.

### I.    Background

Petitioner is currently confined at Jesup Federal Correctional Institution, serving a 180-month term of imprisonment for conspiracy to distribute 500

1

grams or more of methamphetamine and possession of a firearm by a convicted felon. (Resp. Ex. 1 / Doc. 7-1 at 4). When Petitioner initiated the case, he was incarcerated at the Federal Correctional Complex, United States Penitentiary I in Coleman, Florida, which is within the jurisdiction of the Middle District of Florida. (See Doc. 1 at 1). The Federal Bureau of Prisons (BOP) calculates that Petitioner's current release date is January 26, 2025.

On March 15, 2015, at around 7:17 a.m., a prison officer asked Petitioner to give a urine sample for drug testing, but Petitioner was unable to do so at that time. (See Resp. Ex. 2, Incident Report at § 11). So, pursuant to BOP policy, Petitioner was given an 8-ounce cup of water and two hours in which to provide a urine sample. 28 C.F.R. § 550.31(a). According to Petitioner, he was left unsupervised outside the lieutenant's complex and was allowed to drink extra water, which he did. (Doc. 1 at 12). Petitioner claims he drank so much water that he "need[ed] to go number 2" and began to experience severe cramping. (Id.). About 45 minutes after finishing his third or fourth cup of water, Petitioner told the officer he needed to use the restroom, but the officer said he needed to attend to something and left. (Resp. Ex. 10 at § III.B / Doc. 7-1 at 40). At some point, Petitioner approached and knocked on a door, where he made contact with an allegedly irritated Officer Robert Terrones. (Doc. 1 at 14). Petitioner told Officer Terrones that he had been waiting some time for another officer to collect a urine sample from him. (Id.). At around 9:40 a.m., Officer

2

Terrones escorted Petitioner to the restroom to collect the urine sample, but Petitioner was unable to provide one. (Resp. Ex. 2 at § 11; Doc. 1 at 14). As a result, Officer Terrones issued an incident report against Petitioner for refusing to provide a urine sample, in violation of BOP Code 110. (Resp. Ex. 2).

The officer who investigated the incident, Lieutenant A. Candelario, delivered a copy of the incident report to Petitioner on the following morning. (Id. at § 14). Lieutenant Candelario advised Petitioner of his rights and took the following statement: "That's true I just could not go in the time that I was given. I didn't refuse." (Id. at §§ 23-24).[1] The investigation was forwarded to the Unit Discipline Committee (UDC) for a hearing on March 16, 2015. (See id. at §§ 17-21). However, the UDC referred the matter to the Discipline Hearing Officer (DHO) because of the seriousness of the charge. (Id. at § 18). That same day, Petitioner received notice of the DHO hearing (Resp. Ex. 3) and was advised of his rights during the process (Resp. Ex. 4). Petitioner waived the right to have a staff representative and to present witnesses. (Resp. Ex. 3).

The DHO hearing occurred 16 days later, on April 1, 2015. (Resp. Ex. 5, First DHO Report at § I.B). Petitioner again waived the right to have a staff representative (id. at § II.A) as well as the right to present witnesses (id. at §

---

[1] It is unclear what the phrase "That's true" was in reference to. It may have referred to the fact that Petitioner did not provide a urine sample, or it may have referred to the fact that Petitioner told an officer at one point during the waiting period that he needed to use the restroom.

III.C). Petitioner neither admitted nor denied the allegation. (Id. at § III.A). Petitioner submitted a written statement, in which he raised various defenses to the charge. (Id. at § III.B / Doc. 7-1 at 14-16, 23-29). Petitioner stated he was unable to provide a urine sample because (1) he urinated immediately after waking up on the morning of the incident, (2) Officer Terrones was yelling at him, making him too nervous to urinate, and (3) Petitioner had an unspecified medical condition that made urinating difficult. The DHO determined that the greater weight of the evidence supported the charge of refusing to provide a urine sample. (Resp. Ex. 5 at § V). The DHO based its ruling on a review of the evidence, including Officer Terrones's incident report, the chain-of-custody form showing that Petitioner had not given a urine sample, Petitioner's statements to the UDC and DHO, as well as Petitioner's prior statement to Lieutenant Candelario. (Id.). The DHO also rejected Petitioner's defenses to the charge, stating that Petitioner had either failed to raise the defense at the hearing or failed to present evidence in support of the defense. (Id. / Doc. 7-1 at 20-21). The DHO sanctioned Petitioner with the loss of 41 days of good conduct time, among other things. (Id. at § VI). The DHO explained that the sanctions were appropriate because Petitioner's conduct was similar to submitting a "dirty" urine report, which hinders staff's ability to detect and deter illegal drug use. (Id. at § VII). The DHO report was completed on April 10, 2015, and a copy delivered to Petitioner the same day. (Id. at §§ VIII – IX).

4

Following several failed attempts to appeal the decision, Petitioner eventually completed an administrative appeal to the regional director. (See Doc. 1 at 34-35). However, on August 19, 2016, the regional director denied Petitioner's appeal, explaining that Petitioner's due process rights had not been violated and that adequate evidence supported the charge. (Id. at 35). Petitioner then appealed to the Central Office in September 2016 (see id. at 44-46), but he was unsuccessful. Petitioner filed the § 2241 petition on December 1, 2016.

In February 2017, a BOP regional director referred the disciplinary proceeding back to the institution for a rehearing. (See Resp. Ex. 6). At the following UDC hearing on February 15, 2017, Petitioner said he wanted to rely on the same statement as before. (Resp. Ex. 7 at § 17). The UDC again referred the matter to the DHO because of the seriousness of the charge. Once again, Petitioner was notified of the charge and of his rights during the disciplinary process, and he waived the right to present witnesses or have staff assistance. (Resp. Exs. 8, 9). A new DHO conducted the rehearing on February 23, 2017. (Resp. Ex. 10, Second DHO Report at § I.B). The DHO reviewed the same evidence as before, but this time also received memoranda from medical and psychology staff about whether Petitioner suffered from a urological condition. (Id. at §§ III.D, V). According to medical staff, "[p]er review [of] his medical chart there were no noted conditions which would prevent Mr. Vanosdoll … from providing a urine sample." (Resp. Ex. 11). And according to Dr. Raymond

5

Proetto, a psychologist, he "could not locate any information concerning Shy Bladder in this inmate's Psychology Record." (Resp. Ex. 12). Based on the evidence, as supplemented by the medical and psychological records, the DHO affirmed the sanction. (Resp. Ex. 10 at §§ IV-VII).

Petitioner again appealed the DHO's decision, but on December 30, 2017, the administrator for national inmate appeals affirmed the findings. (Pet. Ex. 5 / Doc. 9-1 at 18). The administrator explained that Petitioner's due process rights had been upheld during the disciplinary process, that sufficient evidence supported the charge, and that the sanction was "commensurate to the severity level of the offense." (Id.).

## II.    Discussion

Petitioner challenges the loss of 41 days of good time credit, and asks that the Court order the infraction to be expunged from his prison record. Petitioner raises seven grounds for relief. Grounds 1 through 3 allege that prison officers failed to follow BOP procedures in conducting the urinalysis. Ground 4 alleges that Officer Terrones harassed Petitioner such that he could not urinate. Grounds 5 through 7 allege flaws in the disciplinary and appeal processes.

In his Reply brief, Petitioner also contends that the DHO's decision on rehearing is the "controlling report" for purposes of review. (Doc. 9 at 1). Petitioner claims that the DHO lacked jurisdiction to conduct the rehearing,

and that the second DHO improperly became an investigator by requesting documents from medical and psychology staff. (Id. at 1-4). The Court ordered supplemental briefing to address the effect of the rehearing. (Doc. 25). In its supplemental response, Respondent does not object to the 2017 decision being treated as the operative ruling. (Doc. 26). However, Respondent argues that none of the claims regarding the rehearing states a due process violation. Because the parties seem to agree, the Court will assume for the sake of discussion that the DHO's 2017 decision is the ruling under review.[2]

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, a prisoner does have a protected liberty interest in good time credits, such that those credits cannot be revoked without some measure of due process. Id. at 558. When a disciplinary proceeding may result in the loss of good time credits, due process entitles a prisoner to three safeguards:

> (1) advance written notice of the charges against [the inmate]; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.

---

[2]    Because neither party suggests that the rehearing entirely mooted the issues raised in the habeas petition, and because the parties have addressed the rehearing, the Court will proceed on the existing briefs.

O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff, 418 U.S. at 563-67); see also Gorrell v. Hastings, 541 F. App'x 943, 946 (11th Cir. 2013). Additionally, the Supreme Court has indicated that an impartial decisionmaker is a necessary part of due process. See Wolff, 418 U.S. at 559, 570-71 (discussing whether the prison's adjustment committee was neutral).

The Supreme Court has further clarified that the revocation of good time credits satisfies the requirements of due process if at least "some evidence" supports the disciplinary officer's findings. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56; see also Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994).

The record shows that Petitioner's sanction comported with due process. First, Petitioner received written notice of the charges several days in advance of the rehearing. (See Resp. Exs. 7, 8). Second, Petitioner had the opportunity to present witnesses and evidence at the DHO rehearing, but he waived the right to present witnesses (Resp. Ex. 8), opting instead to submit the same written statement as in the 2015 hearing (Resp. Ex. 7 at § 17; Resp. Ex. 10 at § III.B). Third, the record shows that Petitioner received a written copy of the

DHO's findings on rehearing. (Resp. Ex. 10 at § IX). Petitioner claimed in Ground 6 that he did not receive a copy of the 2015 DHO report "within the time frame set forth by the Administrative Remedy Program Statement," (Doc. 1 at 15), but that claim is now moot because the 2017 decision is the operative ruling. Though Petitioner quarrels with whether the 2017 DHO report relied on adequately proven facts (Doc. 9 at 10), he does not deny that he received a copy of the report and had access to the administrative appeal process. Fourth, there is no indication that the DHO at the rehearing, Officer Aaron Rich, lacked neutrality. Officer Rich was not a witness or a victim, nor was he the officer who wrote the incident report (Officer Terrones) or the officer who investigated the incident (Lieutenant Candelario).

Furthermore, at least some evidence supported the DHO's decision to sanction Petitioner. BOP regulations create a rebuttable presumption that an inmate is unwilling to provide a urine sample if he fails to do so after receiving eight ounces of water and a two-hour extension. 28 C.F.R. § 550.31(a). Petitioner does not dispute that he was given more than eight ounces of water and more than two hours to provide a urine sample, and that he still did not do so. Petitioner raised several defenses to rebut the presumption of unwillingness, but the DHO considered and rejected these explanations. (Resp. Ex. 10 at § V). As recounted in both DHO decisions, the evidence relied on included Officer Terrones's incident report, the chain-of-custody form showing that Petitioner

9

had not provided a urine sample, Petitioner's statements to the UDC and the DHO, as well as Petitioner's statement to Lieutenant Candelario. (Resp. Ex. 5 at § V; Resp. Ex. 10 at § V). The evidence on rehearing also included memoranda from medical and psychology staff that Petitioner did not suffer from a condition which would have prevented him from providing a urine sample. (Resp. Exs. 11, 12). The DHO even made his ruling "based on the greater weight of the evidence." (Resp. Ex. 10 at § V / Doc. 7-1 at 46). Thus, at least "some evidence" supported the DHO's decision to sanction Petitioner. Hill, 472 U.S. at 455; see also Ramey v. Hawk, 730 F. Supp. 1366, 1373-75 (E.D.N.C. 1989) ("ample evidence" supported prisoner's loss of good time credits for refusing to provide a urine sample where he received more than the allotted amount of time and water, and prisoner's record contained scant evidence of urinary problems).

Petitioner argues in Grounds 1 through 3 that the urinalysis procedure did not follow BOP regulations. In Ground 1, Petitioner claims that Officer Terrones violated BOP Program Statement 6060.08 because he wrote the incident report but was not the officer who initially identified Petitioner. (Doc. 1 at 11-12).[3] In Ground 2, Petitioner claims that the guards deviated from BOP

---

[3]  28 C.F.R. § 541.5 provides that "[t]he discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing." 28 C.F.R. § 541.5(a) (emphasis added). Contrary to Petitioner's assertion, Officer Terrones was not required to have identified Petitioner firsthand to write the incident report.

Program Statement 6060.08 and 28 C.F.R. § 550.31 by allowing Petitioner to drink more than eight ounces of water – which Officer Terrones did not mention in the incident report – and by not recording the urinalysis process. (Id. at 12).[4] In Ground 3, Petitioner claims that Officer Terrones failed to use an "indirect" supervision method available under Program Statement 6060.08 for obtaining a urine sample. (Id. at 13). None of the BOP procedures allegedly violated are required by Wolff, nor do the violations undermine the conclusion that "some evidence" supported the sanction. Even assuming, arguendo, that the guards deviated from BOP protocol in performing the urinalysis, "a violation of prison regulations in itself is not a constitutional violation." Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000) (citing Jackson v. Cain, 864 F.2d 1235, 1251-52 (5th Cir. 1989)). As such, "a claim that the BOP violated its own policies or procedures, when those policies and procedures were not mandated by statute or the constitution, does not constitute a violation of federal law." Arguello v. English, No. 5:15-cv-145/LAC/EMT, 2016 WL 1580269, at *5 (N.D. Fla. Mar. 18, 2016) (citing Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011)).

---

[4]     Petitioner does not identify any BOP regulation that requires the urinalysis process to be recorded. Additionally, it is unclear how Officer Terrones's failure to mention in the incident report that Petitioner was allowed to drink more water than authorized was prejudicial. If anything, the fact that Petitioner was permitted to drink additional water, but still did not provide a urine sample, tends to support the charge that he refused.

Petitioner claims in Ground 4 that Officer Terrones sexually harassed him while he was attempting to provide a urine sample. According to Petitioner, when Officer Terrones escorted him to the restroom, Officer Terrones shouted: "You better f—king hurry up. I should just go ahead and put you in the hole. I'm not going to stand here and watch you play with yourself. I've got better things to do." (Doc. 1 at 14). Petitioner claims that Officer Terrones's yelling made him too nervous to urinate. (Id.). However, verbal abuse alone does not establish a constitutional violation. Hernandez v. Fla. Dept. of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)). And the DHO considered, but rejected, Petitioner's defense that Officer Terrones's shouting made him too nervous to give a urine sample. (Resp. Ex. 10 at § V / Doc. 7-1 at 45). Given the wide discretion prison officials have in weighing the evidence in disciplinary proceedings, Hill, 472 U.S. at 455-56, the Court cannot say that the DHO erred in rejecting this defense.

Petitioner asserts in Ground 5 that the disciplinary process was flawed because the DHO did not allow him to submit a hair follicle sample in place of a urine sample. (Doc. 1 at 15). In denying Petitioner's request for hair follicle testing, the DHO explained that "Program Statement 6060.08 …, Urine Surveillance and Narcotic Identification, makes no mention for testing other than urinalysis." (Resp. Ex. 10 at § V / Doc. 7-1 at 46). Due process gives an inmate the right to present witnesses and evidence in his defense, to the extent

compatible with prison safety and correctional goals, Wolff, 418 U.S. at 566, but

it does not entitle an inmate to the drug test of his choice, see Spence v. Farrier,

807 F.2d 753, 755-56 (8th Cir. 1986) (due process did not entitle prisoners to a

confirmatory drug test).

Additionally, Petitioner claims in Ground 7 that the DHO made

erroneous findings because it misconstrued his statements and failed to review

video footage. (Doc. 1 at 17-18). However, it is not up to this Court to reexamine

the record or reinterpret the evidence. Hill, 472 U.S. at 455. The question is

merely "whether there is any evidence in the record that could support the

conclusion reached by the disciplinary board." Id. at 455-56. As noted earlier,

there was enough evidence in the record to support the DHO's conclusions.

Moreover, the record reflects there was no video footage of the corridor where

the relevant events took place (Doc. 22; Doc. 22-1), so the DHO did not err by

not reviewing video footage.

Finally, Petitioner presents contradictory claims in his Reply brief and in

Ground 7. In Ground 7, Petitioner claims that the first DHO erred by not

conducting further investigation, and "[a]t the very minimum a new hearing

date should have been set and medical been contacted …. The DHO claims I

present no facts to support my position yet refuses to investigate any avenue

which would support the facts I present." (Doc. 1 at 18). But Petitioner makes

the opposite claim in his Reply brief. There, Petitioner complains that the

rehearing was invalid and that the second DHO acted improperly by investigating his medical records. (Doc. 9 at 1-4).

Aside from contradicting each other, none of these claims presents a due process violation. <u>Wolff</u> neither requires nor prohibits a DHO to conduct a rehearing or to request documents relevant to a prisoner's claims.

> The Court "is not aware of any cases suggesting that the federal Due Process clause bars the ordering of a second hearing and it is not clear why this should even be the case." <u>Lunney v. Brureton</u>, No. 04-2438, 2005 WL 121720, *14 (S.D.N.Y. Jan. 21, 2005) (Report and Recommendation adopted by 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005)). Where, as here, "the essential requirements of Due Process were met – such as notice of the charges and a hearing conducted in accordance with Due Process, ... – there is no basis on which to conclude that [the petitioner's] constitutional rights were violated." <u>Id.</u> Even "an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge." <u>Meeks v. McBride</u>, 81 F.3d 717, 722 (7th Cir. 1996).

<u>Terry v. Zych</u>, No. 09-cv-12211, 2010 WL 931862, at *3 (E.D. Mich. Mar. 11, 2010). There is also "no time limit on when a DHO hearing or rehearing is to be conducted." <u>Id.</u> (citing <u>Mayo v. Hogsten</u>, No. 06-2241, 2007 WL 1521232, at *5 (M.D. Pa. May 23, 2007)). Additionally, the second DHO did not transform into an "investigator" or lose his status as an impartial decisionmaker merely by requesting Petitioner's medical and psychological records. Finally, even if the rehearing was inconsistent with BOP Program Statements in some way, a

14

violation of BOP regulations does not state a due process violation. Edwards,

209 F.3d at 779; Arguello, 2016 WL 1580269, at *5.[5]

Petitioner's sanction complied with the minimum standards of due process. Having considered each of the claims for relief, the Court finds that none establishes a due process violation. Accordingly, it is hereby **ORDERED**:

1. Petitioner Clark Vanosdoll's Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment against Petitioner and in favor of Respondent, and close the file.

3. If Petitioner appeals the judgment, this Court denies a certificate of

---

[5]    Petitioner also claims that the effect of the rehearing was to "double" other sanctions than the loss of gain time, such as a one-year restriction on visitation privileges. (Doc. 29 at 4). However, Petitioner seeks only restoration of the 41 days of good time credit and expungement of the incident from his record. (Id. at 7). Moreover, the other sanctions did not impose an atypical hardship compared with the ordinary incidents of prison life, and thus did not implicate a protected liberty interest. Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 893 (11th Cir. 2015) (no liberty interest in unfettered visitation rights) (citation omitted); Marshall v. Morton, 421 F. App'x 832, 837-38 (10th Cir. 2011) (reduction of inmate's pay did not implicate a liberty interest).

appealability.[6]

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of January, 2020.

*[signature]*

TIMOTHY J. CORRIGAN
United States District Judge

lc 19
Copies:
Counsel of record
Pro se petitioner

---

[6]     This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (internal quotation marks and citation omitted). Upon due consideration, this Court finds that a COA is not warranted.